

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 26, 2023

**BY ECF**

The Honorable George B. Daniels
United States District Judge
500 Pearl Street
Southern District of New York
New York, New York 10007

    Re:    *United States v. Sylvester Wint,* S3 20 Cr. 57 (GBD)

Dear Judge Daniels:

    The Government respectfully submits this letter in advance of Sylvester Wint's June 28, 2023 sentencing. Wint was a violent shooter in the 59 Brims gang. The Stipulated Guidelines Sentence of 84 months' imprisonment is sufficient but not greater than necessary to reflect the seriousness of his offense, to deter others who might want to join violent street gangs in New York, and to serve the purposes of sentencing.

## I. OFFENSE CONDUCT

### A. Background

    As set forth in the presentence report dated May 3, 2023 (the "PSR"), the 59 Brims (sometimes referred to as "Primetime") are a violent street gang with a national presence and a large number of gang members in the New York City area. (PSR at ¶¶ 51-57) The 59 Brims were one of the original ten sets formed under the United Bloods Nation ("UBN") on Riker's Island in 1993 by Omar Portee, a/k/a "O.G. Mack." (*Id.*) While the 59 Brims were formed on Riker's Island, the gang has a large national presence, including in California, Georgia, Virginia and North Carolina. (*Id.*) The 59 Brims have many members in Brooklyn, the Bronx, and Manhattan. (*Id.*) The members of the 59 Brims engaged in an array of racketeering activity to further the gang's interests, including acts involving murder and attempted murder; acts involving robbery; narcotics distribution; and acts involving bank fraud and wire fraud.

    The 59 Brims, like most other sets of the Bloods in the UBN, have two separate hierarchical rank structures: the "World Wide Lineup," for 59 Brims members in the prison system (often referred to as the "Prison Lineup") and the "World Wide Lineup in the Town," *i.e.*, members of the 59 Brims that are not incarcerated (often referred to as the "Street Lineup"). The Prison Lineup gives orders to the Street Lineup, and the Street Lineup carries out those orders. (*Id.*) Both the Prison Lineup and the Street Lineup follow the below rank structure (in highest rank order):

- "GF" or God Father

- High 020

- Low 020

- 5 Star General/Gangsta[1]

- 4 Star General/Gangsta

- 3 Star General/Gangsta

- 2 Star General/Gangsta

- 1 Star General/Gangsta

### B. The Defendant

As set forth in the presentence report (PSR at ¶¶ 59-61), shortly after midnight on August 24, 2019, two victims were shot multiple times outside of a bodega (the "Bodega") in front of 755 East 216th Street in the Bronx (both victims survived). Surveillance video from outside the Bodega captured the August 24, 2019, shooting, and shows two individuals pulling firearms out of black plastic bags and firing multiple rounds striking the victims. Although the two shooters faces are not clear in the surveillance video from outside the bodega, both perpetrators walked into the Bodega minutes before the shooting. After walking into the Bodega, Wint looked right up at the camera and can be seen in a clear facial shot—Wint can be seen wearing a unique striped sweatshirt and holding a black plastic bag (the same sweatshirt and black plastic bag are visible in the shooting video minutes later from outside the Bodega). The other shooter with Wint is Reid. Reid never looked directly at the camera, but you can still see a side angle of Reid's face, and the height and build of Reid matches the second shooter. After the shooting, surveillance video captured Wint running into a nearby apartment building located at 720 East 219th Street in the Bronx, which as further described below, is the address of Jenkins. Jenkins was later arrested with a .380 caliber pistol that is a ballistics match to shell casings recovered at the scene of the August 24, 2019, shooting.

In the days after the shooting, surveillance video from inside the Bodega and outside the Bodega was featured on several media outlets, including the New York Post. In a recorded prison call on August 31, 2019, an inmate (and 59 Brims' member) named "Screw" at Rikers Island called Wint on Wint's Cellphone (the "Wint Cellphone"). Wint, while still speaking to Screw, then called Jamarr Simmons on Jamarr Simmons' Cellphone. Screw told Jamarr Simmons and Wint that Screw had "been watching the news, and I seen some shit." Jamarr Simmons asked "what you saw, Scrap," and Screw replied "last week." Wint then asked "with a wolf?" and Screw replied "umhmm." Wint then asked: "it was two wolves?" and Screw replied "it was two n******* on the news last week." Jamarr Simmons replied: "we know them?" and Wint then started laughing and said: "n****** Show said . . . yeah [laughing] we don't know them n****** . . . yo, Screw,

---

[1] Some members of the 59 Brims refer to the "General" positions as "Floors," *i.e.*, 5th Floor, Fourth Floor, etc.

we don't know them n******** [laughing]." In addition to this incriminating prison call, cell site records for the Wint Cellphone place the Wint Cellphone in the vicinity of the shooting near the time of the shooting.

Agents executed a search warrant for the Wint Cellphone and were able to access the contents of the Wint Cellphone. There is a substantial amount of criminal activity on the Wint Cellphone, including references to acts of violence, drug dealing, and firearms trafficking. On multiple occasions, to multiple different people, Wint admitted to being the shooter in the August 24, 2019, shooting. Among other conversations, Wint and Reid had a conversation on WhatsApp in which Wint sent Reid the surveillance video that appeared on the news and told Reid that they needed to lay low. In a separate WhatsApp conversation, Evans chastises Wint for walking into the bodega before the shooting where a surveillance camera captured a good shot of Wint's face.

## II.    GUILTY PLEA AND APPLICABLE GUIDELINES RANGE

On February 22, 2023, the defendant pled guilty, pursuant to a plea agreement with the Government, to brandishing a firearm during a crime of violence in connection with the August 24, 2019 shooting. (PSR ¶¶ 30.)  In the plea agreement the parties stipulated that the Stipulated Guidelines Sentence was 84 months' imprisonment, which is the mandatory minimum sentence (the "Stipulated Guidelines Sentence").

## III.   DISCUSSION

### A.  Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005).  Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After making that calculation, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### B. The Court Should Impose the Stipulated Guidelines Sentence

The Government respectfully submits that the Stipulated Guidelines Sentence is appropriate for this defendant.

*First,* the nature and circumstances of the defendant's offense conduct weigh in favor of a Guidelines sentence. The defendant was a violent gang member, with access to firearms and narcotics, who participated in a gang shooting. The Stipulated Guidelines Sentence is therefore necessary to reflect the nature and seriousness of the offense, to provide just punishment, and to protect the community from the defendant.

*Second*, the Stipulated Guidelines Sentence is needed to adequately punish the defendant and to demonstrate the seriousness of his conduct. As shown above, the defendant was a member of a criminal organization responsible for multiple acts of violence, including murders, and drug dealing throughout the community.

*Finally*, looking beyond the defendant, in a case like this—where the defendant was involved in a sprawling, violent gang, the need for general deterrence is important. Sentences in this case will send a message to anyone who might consider joining a gang like the 59 Brims that their conduct will be punished, and that they will be held accountable.

## II. CONCLUSION

For the reasons set forth above, the Court should impose the Stipulated Guidelines Sentence of 84 months' imprisonment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _/s_____
Peter J. Davis
Rushmi Bhaskaran
Assistant United States Attorneys
(212) 637-2468 / 2439

cc: Counsel (by ECF)